Opinion filed April 16, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00223-CV

_____

## GEORGE SHEEHAN, Appellant

## V.

## PAMELA R. SHEEHAN, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CV60093**

## M E M O R A N D U M   O P I N I O N

Appellant, George Sheehan, appeals the trial court's enforcement order and final judgment, which enforced a divorce decree's property division award in favor of Appellee, Pamela R. Sheehan. In three issues, which we treat as two, George argues that the trial court erred in: (1) substantively modifying the divorce decree, resulting in a void judgment; and (2) awarding attorney's fees.

We affirm.

## I. *Factual and Procedural Background*

This case is before this court for a second time. In *Sheehan v. Sheehan* (*Sheehan I*), George appealed the initial divorce decree, arguing that the trial court erred in concluding that George's personal injury suit settlement funds constituted community property to be awarded. As detailed in *Sheehan I*, the facts that relate to the settlement funds are as follows:

> George and [Pamela] married in 1994. The testimony at trial revealed that they had an acrimonious marriage that included separations at various times. On December 15, 2014, George was involved in a motor vehicle accident while in the scope of his employment with West Texas Gas. George and Pamela were separated at the time of the accident, but they reconciled afterwards. They remained together until 2019.
>
> George suffered injuries as a result of the accident that required him to have multiple surgeries. George settled with the driver of the other motor vehicle for her policy limits of $30,000. George's employer provided insurance coverage to him through two policies issued by The Insurance Company of the State of Pennsylvania. One policy provided worker's compensation coverage. The other policy provided underinsured motorist (UIM) coverage.
>
> George settled his UIM claim with The Insurance Company of the State of Pennsylvania after a mediation that occurred in August 2019. The gross amount of the settlement was $1,250,000. After the deduction of attorney's fees and expenses, the net amount payable to George from the settlement was $710,724.25. His attorneys wire-transferred that amount into his and Pamela's joint checking account on October 8, 2019. George and Pamela separated for the final time later that month, and Pamela filed for divorce on November 1, 2019.

No. 11-22-00085-CV, 2023 WL 5436578, at *1 (Tex. App.—Eastland Aug. 24, 2023, no pet.) (mem. op.). We overruled George's issues on appeal, and we affirmed the trial court's judgment in all respects. *Id.* at *4. Relevant to this appeal, the final decree of divorce awarded Pamela "[t]he amount of $64,661[.]44 from the checking account in the name of [George] located at BB & I [sic]." Subsequently, Pamela

filed a petition to enforce the decree, and also sought to enforce the award of funds from the account.

At the hearing on the petition, George argued that the account was empty, and therefore, the trial court had effectively awarded no money. The trial court noted on the record that it did not intend to award an empty account. George acknowledged that the trial court entered a temporary restraining order prior to the final divorce decree to prevent George from depleting community property. In a prior hearing, George specifically admitted to having read and signed the temporary orders; however, according to Pamela, George depleted community property assets by purchasing cars, boats, and ATVs. George also purchased a new house in his son's name, which he intended to have "transferred [back to his name] after th[e] divorce [was] over with." All told, George took approximately $126,000 out of his 401(k)— $102,000 after penalties. After he spent a portion of those funds, he deposited the remainder into the BB&T account. That account once held the amount awarded in the divorce decree, but now reflected a negative balance.

Following the enforcement hearing, the trial court signed an order finding that George "failed to comply with the divorce decree as he did not deliver the amount of $64,661.44 to [Pamela] as ordered, although [he] was able to comply." Consequently, the trial court awarded a money judgment in favor of Pamela for $64,601.44 and reasonable attorney's fees of $6,200.[1] George appealed.

---

[1]The award of $64,601.44 in the judgment being appealed is $60 less than the amount awarded in the divorce decree. The parties do not assign error to this discrepancy. *See Matter of Marriage of Russell,* 556 S.W.3d 451, 455–56 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that "a nunc pro tunc judgment may not be used to correct judicial errors" which "occur[] in the rendering, rather than the entering, of a judgment and arises from a mistake of law or fact that requires judicial reasoning to fix" but may only be used to correct clerical errors which represent "a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered").

## II. *Enforcement and Clarification*

### A. *Standard of Review & Applicable Law*

We review the trial court's ruling on a post-divorce motion for enforcement of a divorce decree under an abuse-of-discretion standard. *Moore v. Moore*, 568 S.W.3d 725, 729 (Tex. App.—Eastland 2019, no pet.). "The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner or whether it acted without reference to any guiding rules or principles." *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

A final, unambiguous divorce decree that disposes of all marital property bars relitigation. *S.C. v. M.B.*, 650 S.W.3d 428, 441 (Tex. 2022); *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam). In other words, a party may not collaterally attack a divorce decree by seeking an order that alters or modifies the decree's property division. *See Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009); *see also* TEX. FAM. CODE ANN. § 9.007(a), (b) (West 2020). However, "the trial court that renders a divorce decree retains jurisdiction to clarify and to enforce the decree's property division." *Perry v. Perry*, 512 S.W.3d 523, 527 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Pearson*, 332 S.W.3d at 363); *see* FAM. §§ 9.002, .006. "Sections 9.002 and 9.006 acknowledge the continuing jurisdiction of the trial court to enforce [the divorce decree]." *Morrison v. Morrison*, 729 S.W.3d 328, 333 (Tex. 2026) (emphasis omitted) (first citing FAM. §§ 9.002, .006; and then citing *Hagen*, 282 S.W.3d at 902). "Those provisions grant 'power' to the trial court to 'enforce the property division' and to 'render further orders.'" *Id.* (quoting FAM. §§ 9.002, .006.).

Among its enforcement remedies, the trial court may render a money judgment, "[i]f a party fails to comply with a decree of divorce or annulment and delivery of property awarded in the decree is no longer an adequate remedy." FAM. § 9.010(a); *see Morrison*, 729 S.W.3d at 332 (recognizing that awarding a

money judgment is a permissible enforcement remedy); *In re Marriage of Pyrtle*, 433 S.W.3d 152, 162–65 (Tex. App.—Dallas 2014, pet. denied) (holding that Section 9.010 authorized the trial court to render a money judgment for damages caused by husband's failure to comply with provision of decree's property division). Further, if a party did not receive payments of money as awarded in the decree, the trial court may render judgment against the defaulting party for the amount of unpaid payments to which the party is entitled. FAM. § 9.010(b). The trial court may also award reasonable attorney's fees as costs in a proceeding to enforce a decree's property division. *Id.* § 9.014; *see Morrison*, 729 S.W.3d at 332.

However, such orders "cannot be used to make a substantive change in a divorce decree after it becomes final, even if it contains substantive legal error." *In re W.L.W.*, 370 S.W.3d 799, 803 (Tex. App.—Fort Worth 2012, orig. proceeding) (citing *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003)). "An order that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce is beyond the jurisdiction of the trial court and is void." *Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex. App.—Dallas 2014, no pet.); *see* FAM. § 9.007(b). "The line between enforcement and modification of a judicial decree depends in large measure on the relief granted." *Morrison,* 729 S.W.3d at 329. To determine whether a subsequent order modifies a decree, "we must interpret the decree to determine not what the trial court should have done but, if possible, what the [trial] court actually did." *Shanks*, 110 S.W.3d at 447.

B. *Discussion*

In his first issue, George argues that the trial court erred by substantively changing the divorce decree in violation of Sections 9.006 and 9.007 of the Texas Family Code. *See* FAM. §§ 9.006, .007. First, George argues that "[t]he [o]rder appealed . . . was entered by the 142nd District Court of Midland County[] but signed

by the elected judge of the 318th District Court," who was without authority to modify the decree. Second, George asserts that the trial court modified the decree by awarding a money judgment for funds held in a specific account which was now liquidated. Pamela responds that the trial court's order does not constitute a modification of the decree, but it enforces George's obligations under the decree. We agree with Pamela.

In the divorce decree, the trial court awarded a specific sum of money contained in the BB&T account, while also entering a separate order prohibiting the parties from depleting community property assets. However, since George violated that order and depleted and/or switched the account, a money judgment for the damages caused by George's actions was appropriate.[2] *See id.* § 9.010(a); *Gomez v. Gomez*, 632 S.W.3d 4, 8 (Tex. App.—El Paso 2020, no pet.) (concluding that the trial court was authorized to render a money judgment to wife as enforcement of the property division where husband withdrew and spent all of the funds in his

---

[2]George testified as follows at the enforcement hearing when asked about the account:

Q. The money that you received from that 401K, did you use that to set up a bank account at B&B trust—or B&BT [sic]?

A. BB&T in Cibolo, Texas, yes, sir.

Q. And so that account at some point during the discovery process had $64,000, correct?

A. Yes, sir.

Q. It started off with more, but got liquidated down as you spent it on living expenses?

A. Yes, sir.

. . . .

Q. And at the time of this trial—or at the final hearing in this Court, had you spent the entirety of the BB&T account?

A. Yes, sir.

Additionally, in an inventory filed with the trial court prior to the divorce decree being signed, George represented that he held $64,661.44 in an American State Bank account and $3,073.31 in a BB&T account, which we presume is the "BB & I" account referenced in the divorce decree.

retirement accounts in violation of a court order prohibiting him from depleting the community's assets while the divorce was pending); *DeGroot v. DeGroot*, 369 S.W.3d 918, 923 (Tex. App.—Dallas 2012, no pet.) (holding that trial court had the authority to reduce award of fifty percent of an account to money judgment because "[husband's] liquidation of the 401(k) plan made it impossible for him to comply with the terms of the decree by delivering to [wife] fifty percent of the 401(k) plan"); *see also Becka v. Becka*, No. 05-19-00612-CV, 2020 WL 4047967, at *5 (Tex. App.—Dallas July 20, 2020, no pet.) (mem. op.) ("In light of the evidence that [the] [h]usband neither owned the account nor could transfer or close it, the trial court acted within its discretion by awarding a money judgment based on the amount of the USAA account at the time of the divorce."); *Dade v. Dade*, No. 01–05–00912–CV, 2007 WL 1153053, at *3 (Tex. App.—Houston [1st Dist.] Apr. 19, 2007, no pet.) (mem. op.) ("We hold that the trial court, after considering the evidence that [the husband] had not received the pension benefits as awarded by the divorce decree and that [the wife] now had possession of those funds, acted within its discretion pursuant to [Section] 9.010 in entering a money judgment against [her]."). In other words, the enforcement order providing for a money judgment "does not seek redivision. Instead, it provides . . . for the collection of damages resulting from breach of the decree." *See Morrison*, 729 S.W.3d at 335 (recognizing that the trial court could permissibly include an enforcement provision that provides for damages resulting from a party's breach of a divorce decree's property division). We conclude that there was no abuse of discretion in the trial court's enforcement order, as it did not substantively change the divorce decree. Rather, it permissibly enforced the delivery of the property awarded in the decree—which was no longer an adequate remedy—by reducing it to a money judgment for the damages caused by his failure to comply. *See id.*; *Beshears*, 423 S.W.3d at 500; *see also* FAM. § 9.010(a).

7

Finally, we note that the Texas constitution provides that "[d]istrict [j]udges may exchange districts, or hold courts for each other when they may deem it expedient, and shall do so when required by law." TEX. CONST. art. V, § 11; *see also* TEX. GOV'T CODE ANN. §§ 24.003 (West 2023) (regarding the transfer of cases and exchange of benches in counties with two or more district courts), 74.094(a) (concerning hearing cases in a county); TEX. R. CIV. P. 330(e) (regarding the exchange and transfer of cases between district courts in a county). The Honorable David W. Lindemood signed both the original divorce decree, the enforcement order, and final judgment that is the subject of this appeal, albeit from two district courts in Midland County: the 318th District Court, the family district court of which he was the presiding judge prior to his retirement, and the 142nd District Court, where Pamela's original petition for enforcement was filed. GOV'T §§ 24.601, 24.626. It is unclear on what basis George contends this was improper, except to proffer his claim that Judge Lindemood made a substantive modification to the decree's property division, an argument that we have rejected. Accordingly, we overrule George's first issue.

In his second issue, George contends that the trial court erred in awarding attorney's fees because the enforcement order was entered without jurisdiction and is void. Because we have rejected George's arguments as to his first issue, and because the trial court is authorized to award attorney's fees in an enforcement proceeding, we overrule George's second issue. *See* FAM. § 9.014; *Morrison*, 729 S.W.3d at 332.

### III. *This Court's Ruling*

We affirm the trial court's judgment.

W. BRUCE WILLIAMS

JUSTICE

April 16, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.